UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

KASHEENA SHIM, et al.,

                    Plaintiffs,

-v-

Z-LIVE INC., et al.,

                    Defendants.

17-CV-6938 (JPO)

OPINION AND ORDER

J. PAUL OETKEN, District Judge:

The parties to this federal and state labor-law suit have arrived at an agreement to settle the litigation. (Dkt. No. 51.) Because the proposed settlement contemplates the dismissal with prejudice of claims under the Fair Labor Standards Act of 1938 ("FLSA"), 29 U.S.C. §§ 201–219, however, it can take effect only if this Court or the Department of Labor approves it, *see Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199, 200 (2d Cir. 2015). For the reasons that follow, the Court declines to approve the parties' proposed settlement as currently drafted. That said, the parties are free to revise the terms of their settlement in accordance with this opinion and submit an updated agreement for the Court's review.

I.     **Background**

In September 2017, Plaintiffs—five current and former tipped employees of Stage 48, a Manhattan nightclub—filed the present lawsuit, seeking redress for federal and state labor-law violations they allegedly experienced during their employment. (Dkt. No. 1 ¶¶ 1–2.) According to the operative complaint, Plaintiffs' employers—Z-Live Inc., Stage 48 Inc., Stage 48 Event Inc., and Pedro Zamora (collectively, "Defendants")—paid Plaintiffs less than the federally mandated minimum wage. (Dkt. No. 40 ("Compl.") ¶¶ 9–20, 25.) Although employers may lawfully pay a subminimum wage to tipped employees where, among other things, those

1

employees are permitted to retain "all tips [they] receive[]," 29 U.S.C. § 203(m)(2)(A), the operative complaint alleges that this precondition has not been satisfied here.  Instead, Plaintiffs contend, Defendants habitually withheld tip money to correct supposed shortfalls in Plaintiffs' end-of-shift reconciliations; to pay taxes attributable to undocumented employees' "off the books" work; to compensate for certain supposed credit-card processing fees, even in connection with cash transactions; and to supplement the wages of untipped employees.  (Compl. ¶¶ 28–32.)

The operative complaint asserts four causes of action on the basis of these alleged practices:  (1) failure to pay Plaintiffs the federally mandated minimum wage in violation of FLSA, *see* 29 U.S.C. § 206(a)(1)(C); (2) appropriation of Plaintiffs' tips in violation of New York law, *see* N.Y. Lab. Law § 196-d; (3) unauthorized deduction from Plaintiffs' wages in violation of New York law, *see id.* § 193(3)(a); and (4) failure to provide Plaintiffs with accurate wage statements in violation of New York law, *see id.* § 195(3).[1]  (Compl. ¶¶ 53–69.)

After the parties engaged in initial discovery and attended two mediation sessions, they reached an agreement to settle this case without further litigation.  (Dkt. No. 51 at 2–3.)  Under the terms of the proposed agreement, Defendants will pay $13,050 to Plaintiff Kasheena Shim, who has taken a primary role in pursuing this litigation; $10,750 each to the four remaining Plaintiffs; and $28,950 to Plaintiffs' counsel, $28,333 of which represents attorney's fees and the remaining $617 of which represents reimbursement for litigation expenses.  (Dkt. No. 51 at 5–7 & n.9; Dkt. No. 51-1 at 1–2.)  In exchange, Plaintiffs will relinquish "any and all . . . claims, complaints, charges and actions of any kind whatsoever, known or unknown, which [they] now have or may have against [D]efendants" (Dkt. No. 51-1 at 1), aside from one specified Plaintiff's

---

[1] For their part, Defendants deny the factual basis for Plaintiffs' claims and contend that Plaintiffs are not entitled to succeed on any of their causes of action.  (Dkt. No. 41 ¶¶ 25, 39–55.)

State Workers' Compensation benefits claims, for which there is a special carve-out (Dkt. No. 51-1 at 3 n.1). In addition, the agreement provides among other things that Plaintiffs "shall not issue or participate in any communication, written, verbal or otherwise, that disparages, criticizes or otherwise reflects adversely upon [D]efendants, . . . provided that [P]laintiffs are permitted to testify truthfully under oath pursuant to a lawfully issued subpoena." (Dkt. No. 51-1 at 5.)

By letter dated September 13, 2018, the parties submitted their proposed settlement agreement for this Court's approval. (Dkt. No. 51.)

## II. Legal Standard

Pursuant to the Second Circuit's decision in *Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199 (2d Cir. 2015), any private settlement that calls for a worker's FLSA claims to be dismissed with prejudice requires approval by the district court or the Department of Labor, *see id.* at 200. Owing to FLSA's role as a "uniquely protective statute," *id.* at 207, courts must remain alert to the risk that the economic vulnerability of low-wage employees could lead them to "accept[] private settlements that ultimately are cheaper to the employer than compliance with [FLSA]," thereby eroding FLSA's deterrent power, *id.* at 205–06 (quoting *Socias v. Vornado Realty, L.P.*, 297 F.R.D. 38, 41 (E.D.N.Y. 2014)). Accordingly, before approving the settlement of FLSA claims, a court must ensure that the settlement is "fair and reasonable," *Lliguichuzhca v. Cinema 60, LLC*, 948 F. Supp. 2d 362, 365 (S.D.N.Y. 2013) (quoting *Wolinsky v. Scholastic Inc.*, 900 F. Supp. 2d 332, 335 (S.D.N.Y. 2012)), such that it represents a "reasonable compromise of disputed issues [rather] than a mere waiver of statutory rights brought about by an employer's overreaching," *id.* (alteration in original) (quoting *Le v. SITA Info. Networking Computing USA, Inc.*, No. 07 Civ. 86, 2008 WL 724155, at *1 (E.D.N.Y. Mar. 13, 2008)).

**III.     Discussion**

The proposed settlement is sound in its fundamentals. The parties have made a serious and credible effort to quantify the potential value of Plaintiffs' claims. As for the FLSA claims, for example, the parties have examined Defendants' employment records to calculate how much additional income each Plaintiff would have received had Defendants paid them minimum wage during their working hours, and they have then doubled this total in accordance with FLSA's liquidated-damages provision. *See* 29 U.S.C. § 216(b). Pursuant to these calculations, the parties reasonably estimate the maximum value of Plaintiffs' FLSA claims to be $45,126.10. (Dkt. No. 51 at 3; Dkt. No. 51-2.) And although the other causes of action are harder to quantify, the parties have offered reasonable calculations for both the tip-appropriation and unlawful-deduction state-law claims that value the two of them together at $73,176.48. (Dkt. No. 51 at 3–4.) Acknowledging that the value of the remaining cause of action—failure to provide accurate wage statements—is "extraordinarily hard to calculate" and unlikely "to be [a] driving factor[]" in the value of Plaintiffs' case overall (Dkt. No. 51 at 4), the parties have thus reasonably valued the maximum total value of Plaintiffs' case at $118,302.58. After factoring in the risk that Plaintiffs might be unsuccessful at trial or would at least rack up additional litigation expenses should the case proceed that far, the parties have arrived at a fair and reasonable settlement value of $85,000, which Defendants stand ready to pay.[2] (Dkt. No. 51 at 4–5.)

---

[2] While the Court concludes that the $85,000 figure represents a fair and reasonable valuation of Plaintiffs' claims, the parties' explanation of how they arrived at that figure does contain some worrying imprecision. Despite reasonably valuing Plaintiffs' various claims at (1) $45,126.10; (2) $17,199.60; and (3) $55,976.88, the parties then inexplicably place the maximum total value of the litigation at $188,302.58, rather than $118,302.58, the sum of these three figures. (Dkt. No. 51 at 3–4.) The parties then purport to reduce $188,302.58 by 65% to arrive at the case's total settlement value of $85,000. (Dkt. No. 51 at 5.) But reducing $188,302.58 by 65% would lead to a figure of $65,905.90. In any event, because both of these discrepancies redound to Plaintiffs' benefit, they give the Court no cause to fear that the settlement contravenes "FLSA's primary remedial purpose: to prevent abuses by unscrupulous

4

Nor does the Court have any concern about the proposed allocation of the settlement funds. Plaintiffs have agreed that their portion of the settlement funds shall be divided evenly among them, except that Plaintiff Shim shall receive a slightly larger share in recognition of the efforts she has made in initiating and directing this litigation. (Dkt. No. 51 at 5.) And the parties' proposal that one third of the settlement funds be set aside as attorney's fees for Plaintiffs' counsel is consistent with "the one-third contingency fees that are commonly accepted in the Second Circuit in FLSA cases." *Najera v. Royal Bedding Co., LLC*, No. 13 Civ. 1767, 2015 WL 3540719, at *3 (E.D.N.Y. June 3, 2015). Having independently reviewed the billing records compiled by Plaintiffs' counsel, this Court concludes that the proposed $28,333 attorney's fee award reflects fair and reasonable compensation for Plaintiffs' counsel's work on this case. (Dkt. No. 51-3.) Finally, the parties' proposal that Plaintiffs' counsel receive an additional $617 from the settlement funds as reimbursement for court costs is likewise reasonable. *See Chamoro v. 293 3rd Café Inc.*, No. 16 Civ. 339, 2016 WL 5719799, at *3–4 (S.D.N.Y. Sept. 30, 2016).

But while the proposed settlement rests on solid foundations, two specific provisions are currently drafted too broadly to meet with this Court's approval. First, although the Court has explained that $85,000 reflects a fair and reasonable settlement value for the claims Plaintiffs have asserted in the instant lawsuit, the proposed settlement requires Plaintiffs to relinquish not only these and similar claims but also "all other claims . . . of any kind whatsoever" against Defendants, including "unknown" claims that are impossible to valuate at present. (Dkt. No. 51-1 at 1.) In *Cheeks*, the Second Circuit pointed to "overbroad release[s] that would 'waive

---

employers and remedy the disparate bargaining power between employers and employees." *Cheeks*, 796 F.3d at 207.

5

practically any possible claim against the defendants, including unknown claims and claims that have no relationship whatsoever to wage-and-hour issues'" as exemplifying precisely the sort of "potential for abuse" of the settlement process that "underscores why judicial approval in the FLSA setting is necessary." *Cheeks*, 796 F.3d at 206 (quoting *Lopez v. Nights of Cabiria, LLC*, 96 F. Supp. 3d 170, 181 (S.D.N.Y. 2015)). Accordingly, courts in this District routinely decline to approve settlements that contain releases that sweep so broadly. *See, e.g.*, *Villanueva v. 179 Third Ave. Rest, Inc.*, No. 16 Civ. 8782, 2018 WL 3392870, at *2–3 (S.D.N.Y. July 12, 2018); *Mobley v. Five Gems Mgmt. Corp.*, No. 17 Civ. 9448, 2018 WL 1684343, at *6 (S.D.N.Y. Apr. 6, 2018); *Bukhari v. Senior*, No. 16 Civ. 9249, 2018 WL 559153, at *1–2 (S.D.N.Y. Jan. 23, 2018); *Metwali v. APV Valet Parking Corp.*, No. 16 Civ. 2440, 2017 WL 4326054, at *1 (S.D.N.Y. Sept. 13, 2017). The Court therefore declines to approve the settlement as currently written. In doing so, however, the Court notes that the parties could protect their interest in finality and secure the Court's approval by narrowing the release such that it is limited to claims that share a factual or legal nexus with the claims Plaintiffs sought to press in this suit. *See, e.g.*, *Velandia v. Serendipity 3, Inc.*, No. 16 Civ. 1799, 2018 WL 3418776, at *3 & n.1 (S.D.N.Y. July 12, 2018).

Second, the proposed settlement purports to bar Plaintiffs from engaging in "any communication, written, verbal or otherwise, that disparages, criticizes or otherwise reflects adversely upon [D]efendants," with the only exception being that Plaintiffs are allowed to testify truthfully pursuant to a subpoena. (Dkt. No. 51-1 at 5.) While "not *every* non-disparagement clause in an FLSA settlement is *per se* objectionable," preventing FLSA plaintiffs from making "truthful statements about [their] experience litigating their case" runs counter to FLSA's deterrent purposes. *Lopez*, 96 F. Supp. 3d at 180 n.65. Accordingly, courts in this District

regularly reject proposed settlement agreements containing non-disparagement clauses that "could prevent the settling plaintiffs from making truthful statements to others regarding the facts underlying their claims or the litigation of [their] case." *Weng v. T&W Rest., Inc.*, No. 15 Civ. 8167, 2016 WL 3566849, at *4 (S.D.N.Y. June 22, 2016) (Moses, M.J.); *accord, e.g.*, *Galindo v. E. Cty. Louth Inc.*, No. 16 Civ. 9149, 2017 WL 5195237, at *5 (S.D.N.Y. Nov. 9, 2017); *Lopez v. Ploy Dee, Inc.*, No. 15 Civ. 647, 2016 WL 1626631, at *3 (S.D.N.Y. Apr. 21, 2016); *Felix v. Breakroom Burgers & Tacos*, No. 15 Civ. 3531, 2016 WL 3791149, at *2–3 (S.D.N.Y. Mar. 8, 2016). Here, too, the parties could cure the agreement's defect by narrowing the scope of the objectionable provision, and specifically by making clear that Plaintiffs remain free to make truthful statements about this litigation even absent a subpoena. *See, e.g.*, *Velandia*, 2018 WL 3418776, at *3–4.

Ultimately, the Court is willing to approve the parties' settlement agreement if the parties narrow the release-of-claims and non-disparagement provisions in a way that brings them within the scope of what courts in this District have held to be fair and reasonable in the FLSA context. For now, however, the Court is constrained to withhold approval of the settlement as it is currently drafted.

## IV. Conclusion

For the foregoing reasons, the parties' motion to approve the proposed settlement is DENIED without prejudice to the submission of a revised settlement proposal. On or before

November 30, 2018, the parties shall either (1) file a revised settlement agreement for the Court's review, or (2) file a status letter indicating their intent to continue to litigation this action.

SO ORDERED.

Dated: November 5, 2018
New York, New York

_____
J. PAUL OETKEN
United States District Judge